IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JESSE WOODY**　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　1:25cv225 TBM-RPM

**THE DEPOT ON CANAL, LLC**　　　　　　　　　　　　　　**DEFENDANT**
　　　　　　　　　　　　　　　　　　　　　　　　**(JURY TRIAL DEMANDED)**

---

**COMPLAINT**

---

Woody was a bartender at the Depot. After she gave birth to a child, she asked to return to work and provided a doctor's note releasing her. The restaurant owner refused. He told her that he thought she was a "liability" and might "blow a stitch," regardless of what the doctor said. When she continued to assert that she should be allowed to return to work, he fired her.

For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

<u>PARTIES</u>

1. Plaintiff Jesse Woody is an adult resident of Mississippi.

2. Defendant The Depot on Canal LLC is a Mississippi limited liability company with a principal place of business in Picayune, Mississippi at 100 West Canal Street, Picayune, Mississippi 39466.

3. Defendant can be served with process via its registered agent Michael Ray Hart, located at 512 Pine Street, Picayune, Mississippi 39466.

4. Plaintiff was an employee of the Defendant.

5. Defendant was Plaintiff's employer.

6. Defendant is subject to the Pregnant Workers Fairness Act, the ADA and Title VII.

7. Plaintiff was protected by the Pregnant Workers Fairness Act, the ADA and Title VII.

8. Defendant has more than fifteen (15) employees.

## JURISDICTION, VENUE, AND JURY DEMAND

9. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, including Title VII.

10. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because all work at issue was located in and around Pearl River County, Mississippi.

11. Plaintiff demands a trial by jury on all issues so triable.

## FACTS

12. Woody was hired on or around April 19, 2024, by The Depot on Canal.

13. Woody worked as a Bartender.

14. Woody received no discipline or poor performance evaluations from April through August 2, 2024.

15. On August 2, 2024, Woody began maternity leave.

16. On August 3, 2024, Woody gave birth to a son by cesarean section.

17. On Sunday, August 25, 2024, Woody was aware that a coworker was out for two days that week and the shifts were available to be filled.

18. Woody notified the owner, Ray Hart, via text that Woody was ready to return to work from her leave and would take those two shifts.

19. Hart responded "how many weeks has it been? I don't think it's time."

20. Woody responded "3 weeks. I have bills to pay and two days a week isn't that much."

21. Hart responded "Jesse that is a liability for me I have to have a doctor's release. With no restrictions."

22. On August 26, 2024, Woody's obstetrician, Dr. John Holland, released her to return to work.

23. The release did not impose any lifting, standing, or other restrictions on the nature of the work she could do.

24. The only restriction was on the duration of work, which was "2 days a week with an 8 hour a shift limit."

25. The note stated "if you have any questions or concerns, please don't hesitate to call."

26. Woody sent this release to Hart.

27. Hart asked for the doctor's phone number, which Woody provided.

28. Hart refused to allow Woody to return with this release, insisting that "I need a full release with no restrictions," later reiterating "zero restrictions."

29. In a phone call with Woody, Hart explained that he still thinks she is "a liability" - notwithstanding the doctor's opinion - and that she will "blow a stitch."

30. In so doing, Hart refused to provide accommodations under the Pregnant Workers Fairness Act.

31. There were two shifts of appropriate length open at the time.

32. There was no reason that Hart could not have accommodated these restrictions.

33. Woody responded "When I get that paper am I actually gonna be able to come back?"

34. Hart responded "Yes"

35. Woody then explained that she disagreed with Hart's refusal to accommodate: "I don't understand why two days 8 hour shifts is still a restriction . . . . My body is capable of working. If I didn't have a C-section this wouldn't be an issue."

36. In Hart's reply he admitted that he was not allowing her to work because of her

3

pregnancy and childbirth, stating "you're exactly right Jesse."

37. Hart relied on his experience as "an insurance agent for about 26 years" to say that Jesse is "wrong" and "I understand it way better than you do."

38. On August 27, 2024, Woody received an updated work release from her doctor which had no restrictions effective September 2, 2024.

39. Woody sent the release to Hart.

40. Hart responded by firing Woody.

41. Woody filed EEOC charge 425-2024-01729 on September 6, 2024.

42. This charge raised all issues alleged in this complaint.

43. Before the EEOC, Hart provided a position statement on behalf of The Depot.

44. In the position statement, Hart admitted that he told Woody that she needed "six to eight weeks of recovery after having a C-section."

45. Hart admitted that when she asked to return he was "concerned that she was only three weeks out of surgery from a C-Section."

46. Hart is not a medical doctor.

47. Hart did not perform a medical exam on Woody.

48. Hart described Woody as "very combative" and said that he was unhappy that Woody had contacted her coworkers and told them what he was doing.

49. Woody's contact with coworkers was to oppose Hart's discrimination against Woody.

50. He described Woody as "more interested in returning early to make money and disregarding the liability that my business would face" for allowing her to work after her C-Section.

51. He admitted that this was his reason for terminating Woody: "The moment that I decided

4

her return was not in the best interest of the business was due to her lack of care and responsibility to protecting the business (sic)."

52. He also described her opposition to his actions as "insubordination" and stated that it contributed to his termination decision.

53. The EEOC investigated and found that the employer had violated the law.

54. The EEOC found that "The Respondent may not prohibit an employee from returning to work for a predetermined length of time after childbirth. The Charging Party was able to work but was denied."

55. The EEOC attempted conciliation, which failed.

56. The EEOC issued a notice of right to sue on June 4, 2025.

57. Plaintiff's rate of pay at the time of her termination was $10 per hour plus tips.

58. Plaintiff's rate of receiving tips averaged an additional $15.13 per hour.

59. Plaintiff worked for the employer for 432 hours over 15 weeks, or an average of 29 hours per week.

60. Plaintiff lost wages of approximately $728.77 per week as a result of the unlawful actions of the Defendant.

## CAUSES OF ACTION

COUNT I: RETALIATION UNDER TITLE VII

61. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

62. Under Title VII, it is unlawful for Defendant to retaliate against any person who opposes what is reasonably believed to be sex/pregnancy discrimination.

63. Plaintiff engaged in protected activity.

64. Specifically, Plaintiff opposed Defendant's discrimination by informing the owner that

she believed he was discriminating against her because she had a C-Section.

65. Plaintiff further opposed Defendant's discrimination by informing her coworkers of this discrimination and asking for their support.

66. Defendant took adverse action against Plaintiff by firing her.

67. Defendant took this adverse action because of the aforementioned protected activities.

68. This violates the law.

69. In doing so, Defendant harmed Plaintiff.

COUNT II: RETALIATION UNDER THE ADA

70. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

71. Under the Americans with Disabilities Act, it is unlawful for Defendant to retaliate against any person who requests reasonable accommodations.

72. Plaintiff engaged in protected activity.

73. Plaintiff engaged in protected activity by requesting a reasonable accommodation of only working two days a week for eight hours per shift related to her medical condition.

74. Defendant took adverse action against Plaintiff because of these protected activities.

75. Defendant's termination of Plaintiff was an adverse action.

76. This violates the law.

77. In doing so, Defendant harmed Plaintiff.

COUNT III: DISCRIMINATION UNDER THE ADA

78. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

79. Under the Americans with Disabilities Act, it is unlawful for Defendant to discriminate against any person who is disabled as defined by that law.

80. This includes being regarded as disabled, having a history or record of disability, or

having a medical condition or impairment that substantially limits a major life activity.

81. Plaintiff is disabled under this definition.

82. Defendant incorrectly regarded Plaintiff as unable to perform any work for 6 to 8 weeks.

83. Defendant took adverse action by refusing to schedule Plaintiff for work during this period because she was disabled as defined by the ADA.

84. Defendant took further adverse action by terminating Plaintiff because of Plaintiff's disability.

85. This violates the law.

86. In doing so, Defendant harmed Plaintiff.

COUNT IV: FAILURE TO ACCOMMODATE UNDER THE ADA

87. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

88. Under the Americans with Disabilities Act, it is unlawful for Defendant to fail to reasonably accommodate any person who is disabled.

89. Plaintiff was disabled.

90. Defendant was reasonably able to accommodate her restriction of working two days per week for eight hours a day.

91. Defendant refused to accommodate this restriction

92. This violates the law.

93. In doing so, Defendant harmed Plaintiff.

COUNT V: FAILURE TO ACCOMMODATE UNDER THE PREGNANT WORKERS FAIRNESS ACT

94. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

95. Under the Pregnant Workers Fairness Act, it is unlawful for Defendant to fail to reasonably accommodate restrictions related to pregnancy, childbirth, or related medical

conditions.

96. It is similarly unlawful under the Act to require an employee to take leave when there is a reasonable accommodation that would be sufficient to allow the employee to return.

97. Plaintiff was protected by this statute since she was pregnant and gave birth.

98. Defendant was reasonably able to accommodate her restriction of working two days per week for eight hours a day.

99. Defendant refused to accommodate this restriction and required her to remain on leave instead.

100. This violates the law.

101. In doing so, Defendant harmed Plaintiff.

## COUNT VI: RETALIATION UNDER THE PREGNANT WORKERS FAIRNESS ACT

102. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

103. Under the Pregnant Workers Fairness Act, it is unlawful for Defendant to take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee.

104. Plaintiff was protected by this statute since she was pregnant and gave birth.

105. Defendant fired Plaintiff because she requested reasonable accommodations.

106. This violates the law.

107. In doing so, Defendant harmed Plaintiff.

## COUNT VII: TITLE VII: FAILURE TO SCHEDULE

108. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

109. Under Title VII, it is unlawful for Defendant to discriminate against any person based on sex, including pregnancy/childbirth.

110. Defendant refused to schedule Plaintiff.

111. This was an adverse action.

112. This adverse action was taken because of Plaintiff's pregnancy/childbirth.

113. This violates the law.

114. In doing so, Defendant harmed Plaintiff.

COUNT VIII: TITLE VII: TERMINATION

115. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

116. Under Title VII, it is unlawful for Defendant to discriminate against any person based on sex, including pregnancy/childbirth.

117. Defendant terminated Plaintiff.

118. This was an adverse action.

119. This adverse action was taken because of Plaintiff's pregnancy/childbirth.

120. This violates the law.

121. In doing so, Defendant harmed Plaintiff.

REMEDIES

122. Plaintiff seeks all remedies available, including but not limited to the following:

    a. A final judgment declaring that Defendant has violated the law;

    b. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

    c. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar

    violations;

d. Any other equitable relief as this honorable Court deems appropriate;

e. Back pay;

f. Reinstatement and/or front pay, as appropriate;

g. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

h. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

i. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

j. Statutory liquidated damages;

k. Nominal damages if no other damages are available;

l. Pre- and post-judgment interest;

m. Attorney fees;

n. Costs; and/or,

o. Any other relief available under any applicable principle of law or equity.

This the 16th day of July, 2025.

                                            Respectfully submitted,

                                            JESSE WOODY, PLAINTIFF

                                            By: /s/ Joel F. Dillard  
                                                    Joel F. Dillard (MSB No. 104202)  
                                                    Joel F. Dillard, P.A.  
                                                    775 North Congress Street  
                                                    Jackson, Mississippi 39202  
                                                    (601) 509-1372 x2  
                                                    joel@joeldillard.com